■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v TASKER SPRUILL, Appellant. [750 NYS2d 312] —Appeal by the defendant from a judgment of the Supreme Court, Kings County (Belen, J.), rendered September 16, 1998, convicting him of murder in the second degree, upon a jury verdict, and imposing sentence.

Ordered that the judgment is affirmed.

On October 22, 1993, Tracey Thomas was shot and killed as

he sat in his car outside a game room operated by the defendant, who was known as "Pike." During the course of the police investigation of the incident, a man named "Pike" was identified as a suspect. The police attempted to locate the defendant, but were unable to do so until August 1997 when he was apprehended in Baltimore. When he was apprehended he claimed that his name was Kevin Michael Mulberry.

At trial, two eyewitnesses identified the defendant as the shooter. As evidence of consciousness of guilt, one of the witnesses was permitted to testify regarding an implied threat made by a fellow inmate concerning his testimony in this case. The People also contended that the defendant's alteration of a tattoo on his arm constituted evidence of consciousness of guilt. The People and the defendant stipulated that the defendant "at one time had a small tattoo on * * * his left arm" which said "Pike." At the time of trial, the word "Pike" had been covered with a picture of a panther, which was shown to the jury.

Contrary to the defendant's contention, the trial court providently exercised its discretion in permitting the testimony regarding the implied threat. The witness' testimony of his conversation with the fellow inmate circumstantially connected the defendant to the threat (*see People v Cotto,* 222 AD2d 345; *People v Kornegay,* 164 AD2d 868). The witness' credibility was a matter for the jury.

The trial court also providently exercised its discretion in permitting the alteration of the defendant's tattoo to be considered as evidence of consciousness of guilt (*see People v Torres,* 179 AD2d 696). While there was no direct evidence as to when the defendant altered his tattoo, there was sufficient evidence from which it could be inferred that the tattoo was altered after the shooting. Further, the trial court gave a comprehensive instruction regarding evidence of consciousness of guilt, advising the jury that such proof has slight value, must be scrutinized carefully, and that there could be innocent explanations for such conduct.

While the prosecutor improperly implied during his summation that the defendant should have called his brothers, who were present at the crime scene, as witnesses, that error does not warrant reversal (*see People v Gonzalez,* 97 AD2d 423).

The defendant's remaining contentions, including those raised in his supplemental pro se brief, are without merit. Altman, J.P., H. Miller and Rivera, JJ., concur.

Goldstein, J., dissents and votes to reverse the judgment, on the law, and to order a new trial, with the following memoran-

dum: I disagree with the majority, and would hold that the improper admission of evidence of purported intimidation of a witness and the prosecutor's arguments in summation warrant reversal of the defendant's conviction and a new trial.

During the course of the trial the prosecutor, over objection, elicited testimony from a key eyewitness that about four months prior to the trial an unidentified inmate in Riker's Island Correctional Facility accused him of being a "snitch" and showed him a copy of a document containing his prior statements. The witness claimed that his name was typed on the document. This testimony was admitted as evidence that the defendant attempted to intimidate the witness, demonstrating consciousness of guilt.

Three to four months prior to trial, certain police reports had been released to the defendant. However, the witness' name had been redacted from the reports. Further, it is undisputed that the prosecutor only released a copy of the grand jury minutes to the defense counsel at the commencement of the trial. These undisputed facts indicated that the documents shown to the witness could not have been documents released by the prosecutor to the defendant. The evidence was thus insufficient to circumstantially relate the alleged threatening conduct to the defendant, and accordingly should have been excluded (*see People v Rivera,* 160 AD2d 267; *cf. People v Pitts,* 218 AD2d 715).

In his summation, the prosecutor compounded the error when he argued that the witness was shown his "very own sworn testimony to the grand jury," knowing full well that such could not have been the case. The defendant's objection to this comment was overruled.

The prosecutor also attempted to demonstrate that the defendant altered a tattoo, which originally bore his nickname "Pike," as evidence of consciousness of guilt. The defense counsel noted that such evidence could only be relevant to consciousness of guilt if the tattoo was altered after the instant crime was committed in 1993. There is no evidence in the record as to when the defendant altered his tattoo. The prosecutor acknowledged that he could not produce such evidence because a witness was "now dead." Without objection, the parties stipulated that the defendant "at one time had a small tattoo" which said "Pike" and the defendant showed his arm to the jury to demonstrate what the tattoo looked like at the time of the trial.

In summation, the prosecutor argued that the defendant demonstrated his consciousness of guilt by "changing his tattoo

which said 'Pike'." As previously noted, the prosecutor could not establish when the defendant changed the tattoo, and therefore could not establish consciousness of guilt based upon the defendant's alteration of the tattoo. His comments in summation were a calculated effort to insert facts not in evidence (see People v Taylor, 296 AD2d 512).

Further, the prosecutor noted in summation that the defendant's two brothers were present when the crime occurred, and did not identify someone other than the defendant as the perpetrator. The defendant's brothers did not testify at the trial. The prosecutor's comments implied that the defendant had some obligation to call his brothers as witnesses, and thus shifted the burden of proof to the defendant (see People v Walters, 251 AD2d 433).

The defendant's conviction was based upon the testimony of two witnesses with lengthy criminal records. One witness had been unable to identify the defendant from photographs when interviewed by the police. She later invoked the Fifth Amendment on cross-examination, and in exchange for her testimony was granted use immunity with respect to her participation in drug dealings.

The other witness, who was serving a term of imprisonment in state prison and was to serve time in punitive segregation for violation of prison rules, testified in exchange for promises that the prosecutor would ask to have him kept out of punitive segregation, request his transfer to a facility where he could secure work release, and urge his release on parole. The prosecutor successfully kept him out of punitive segregation, and agreed to the remaining conditions.

In view of the quality of the evidence adduced against the defendant, the errors cannot be deemed harmless.

Accordingly, it is my opinion that the judgment must be reversed and a new trial ordered.